## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

M.D. and S.H., individually
and on behalf of their minor
child L.D.,

      Plaintiffs,

   v.

VINELAND CITY BOARD OF
EDUCATION d/b/a VINELAND CITY
PUBLIC SCHOOLS; NEW JERSEY
DEPARTMENT OF EDUCATION;
KEVIN DEHMER, Interim
Commissioner of Education;
NEW JERSEY OFFICE OF
ADMINISTRATIVE LAW; KATHLEEN
CALEMMO, Administrative Law
Judge, DEAN J. BUONO,
Administrative Law
Judge; and DOES 1-250,
SIMILIARLY SITUATED
ADMINISTRATIVE LAW
JUDGES,

      Defendants.

No. 1:19-cv-12154-NLH-MJS

**OPINION**

---

ROBERT CRAIG THURSTON
THURSTON LAW OFFICES LLC
100 SPRINGDALE ROAD A3
PMB 287
CHERRY HILL, NJ 08003

    *Counsel for Plaintiffs.*

KERRY SORANNO
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET - P.O. BOX 112
TRENTON, NJ 08625

    *Counsel for the State Defendants.*

JAY D. BRANDERBIT
KENT & MCBRIDE, P.C.
1617 JFK BOULEVARD
SUITE 1140
PHILADELPHIA, PA 19103

*Counsel for Vineland City Board of Education.*

**HILLMAN**, District Judge

Currently before the Court is the State Defendants'[1] Motion to Dismiss Plaintiffs'[2] Complaint (ECF 49).  For the reasons that follow, the State Defendants' motion will be granted in part and denied in part.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

For purposes of this motion, the Court takes the facts alleged in the complaint as true and will only recount those salient to the instant motion.  L.D. is a disabled child who was receiving special education services from Vineland City Public Schools ("VPS").  (ECF 26 at 50).  Plaintiffs allege that L.D. was diagnosed with Attention Deficit Hyperactivity Disorder along with other neurological disorders when he was in the first grade.  (Id.)  At that time, because L.D.'s parents felt that he

─────────────────

[1] The State Defendants are the New Jersey Department of Education (the "NJDOE"), the New Jersey Office of Administrative Law (the "OAL"), the Commissioner of Education, Kathleen Calemmo, Administrative Law Judge, Dean J. Buono, Administrative Law Judge and DOEs 1-250, Similarly Situated Administrative Law Judges.  (See ECF 49).

[2] Plaintiffs are M.D. and S.H., individually and on behalf of their minor child L.D. (See generally ECF 26).

was not getting the proper educational services at the public
elementary school, they sent him to a charter school in the
area.  (Id. at 50-51).  L.D. struggled at the charter school and
his parents re-enrolled him in the public elementary school when
he reached the fifth grade.  (Id.)  However, L.D. was provided
with a similar education plan as the one he received at the
charter school and struggled academically. (Id.)  Though VPS
held an Initial Identification and Evaluation Planning session
with Plaintiffs and recorded that L.D. had some disabilities,
VPS refused to consider L.D. for special education despite
multiple requests.  (Id. at 51-53).  When VPS finally agreed to
evaluate L.D., they still refused to provide special education
and suggested that L.D.'s parents speak to him about his
struggles.  (Id. at 53).  Plaintiffs allege that the evaluation
that was provided fell grossly short of the legal standard for
such evaluations.  (Id. at 55).  After continued failed efforts
to get VPS to address their concerns, Plaintiffs removed L.D.
from VPS and placed him in a private program, where he greatly
improved his academic performance.  (Id. at 60-61).

On June 28, 2018, Plaintiffs filed a due process complaint
against VPS with the NJDOE.  (Id.)  VPS never responded to the
complaint, and it was later transferred to the OAL for a
hearing.  (Id.)  Plaintiffs allege that though they were
entitled to a hearing within approximately ten days of that

3

transmittal, ALJ Buono held a settlement conference instead. (Id.)   Thereafter, because the parties did not settle, the matter was transferred to ALJ Calemmo to hold a hearing, who set the hearing date for months out into the future, despite there being no adjournment request by the parties.   (Id. at 62). Plaintiffs allege that ALJ Calemmo issued her opinion 209 days after their case was transmitted to the OAL and 60 days after the last hearing was held.   (Id.)   Plaintiffs also generally allege that the ALJs were not properly trained and supervised by the NJDOE and OAL in order to be able to carry out their responsibilities under the law.   (See id. at 122).

   Plaintiffs originally filed this case against VPS on May 6, 2019.   (ECF 1).   On October 23, 2020, Plaintiffs amended the complaint to include the State Defendants. (ECF 26).   The operative complaint added various counts against some or all of the State Defendants.   They are Count I (legal error on the standard of FAPE in violation of the IDEA by ALJ Calemmo); Count III (procedural violations of the IDEA by ALJ Calemmo); Count IV (other legal errors of ALJ Calemmo against the OAL and ALJ Calemmo); Count VIII (systemic violation of the 10 Day Peremptory Hearing Date rule by the State Defendants); Count IX (systemic violation of the adjournment rule by the State Defendants); Count X (systemic violation of the access to records procedural safeguards by the State Defendants); Count XI

4

(systemic violation of discovery rules by the State Defendants);
Count XII (systemic violation of the rules of evidence by the
State Defendants); Count XIII (systemic violation of New Jersey
regulations in special education cases by the State Defendants);
Count XIV (systemic violation of hearing officer qualifications
by the NJDOE, the OAL, ALJ Buono, ALJ Calemmo, and Doe ALJs);
Count XV (systemic violation of the independence of the
adjudicating body of special education disputes by the State
Defendants); Count XVI (federal preemption against the State
Defendants); Count XVII (violation of § 504 of the
Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., by the
NJDOE, the OAL, ALJ Buono, and ALJ Calemmo); Count XVIII
(violation of Title II of the Americans with Disabilities Act of
1990, 42 U.S.C. § 12101 et seq. (the "ADA") by the NJDOE, the
OAL, ALJ Buono, and ALJ Calemmo); Count IXX (systemic civil
rights violations under 42 U.S.C.§ 1983 by the State
Defendants); Count XX (systemic violation of the 45 Day Rule as
Denial of FAPE by the State Defendants); and Count XXI
(procedural violations of the IDEA by the State Defendants).

Instead of attacking the complaint count by count, the
State Defendants organize their motion to dismiss around certain
legal theories and arguments.  Thus, the Court will address the
motion to dismiss by proceeding through the State Defendants'
arguments in the order that they are raised.

**BACKGROUND**

I.   The IDEA

Though Plaintiffs state claims under laws other than the
IDEA, the thrust of their complaint revolves around the
defendant's failure to honor their responsibilities under the
IDEA.  Therefore, the Court will provide some color on the IDEA
as a statutory and regulatory scheme.  Congress enacted the IDEA
to, among other things, ensure "the rights of children with
disabilities and parents of such children are protected[.]"  20
U.S.C. § 1400(d)(1)(A)-(B).  The IDEA requires that every child
with a disability receive a free appropriate public education (a
"FAPE") from their public school if that school receives federal
funding under the IDEA.  Id. at § 1412(a)(1)(A); 34 C.F.R. §
300.101(a).  The term "free appropriate public education" means
the provision of "special education and related services" that
meet certain criteria.  20 U.S.C. § 1401(9).  The IDEA also
guarantees parents of disabled children a right to participate
in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and
that the rights of disabled students and their parents are not
infringed, Congress enacted various "procedural safeguards" that
participating public schools must comply with.  Id. at §
1412(6)(A); id. at § 1415(a).  One such procedural safeguard
provides standards for adjudicating disputes about whether a

6

school has adequately provided a FAPE.  Per Congress'
requirements, these disputes begin with the filing of a "due
process petition" or "due process complaint."  Either the public
school or the child may file a due process complaint, and that
complaint may seek relief with respect to "any matter relating
to the identification, evaluation, or educational placement of
the child, or the provision of a free appropriate public
education to such child."  Id. at § 1415(b)(6).

The IDEA contemplates that it is the State Educational
Agency that is responsible for ensuring fair and impartial
procedures in place to handle any due process petition.  Id. at
§1415 (f)(1)(A) ("Whenever a complaint has been received under
subsection (b)(6) or (k), the parents or the local educational
agency involved in such complaint shall have an opportunity for
an impartial due process hearing, which shall be conducted by
the State educational agency or by the local educational agency,
as determined by State law or by the State educational
agency."); id. at §1415(e)(1) ("Any State educational agency or
local educational agency that receives assistance under this
subchapter shall ensure that procedures are established and
implemented to allow parties to disputes involving any matter.")
Once a due process complaint has been filed, Congress has set
strict deadlines by which certain events must occur.  See Id. at
§ 1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a

due process hearing"); 34 C.F.R. § 300.515(a) (setting forth a strict timeframe for due process petition resolution); N.J.A.C. 6A:14-2.7(j) (same).

Beginning with the date the due process complaint is filed, the parties have thirty days within which to settle or otherwise resolve the dispute to the satisfaction of the parent and child. See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b). This period is referred to as the "resolution period." If the case is not resolved during the resolution period, it may proceed to a hearing. Congress has called these "due process hearings." In New Jersey, "[a] due process hearing is an administrative hearing conducted by an administrative law judge" in the OAL. N.J.A.C. 6A:14-2.7(a). "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence" 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b); see N.J.A.C. 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge . . . after the conclusion of the resolution period"). Once the 30-day resolution period ends, federal regulations require that due process petitions be decided by hearing officers within 45 days, unless either party requests specific adjournments. 34 C.F.R. § 300.515(a) (states

receiving federal funding "must ensure that not later than 45
days after the expiration of the 30 day period under §
300.510(b) . . . (1) A final decision is reached in the hearing;
and (2) A copy of the decision is mailed to each of the
parties."). New Jersey's Administrative Code contains a similar
requirement. N.J.A.C. 6A:14-2.7(j) ("[a] final decision shall
be rendered by the administrative law judge not later than 45
calendar days after the conclusion of the resolution period[.]")

Both federal and New Jersey State law permit "specific
adjournments" to be granted "at the request of either party"
which will effectively toll the 45-day period within which a
decision must be entered. See N.J.A.C. 6A:14-2.7(j) (45-day
period may only be extended if "specific adjournments are
granted by the administrative law judge in response to requests
by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a]
hearing or reviewing officer may grant specific extensions of
time beyond the periods set out in paragraphs (a) and (b) of
this section at the request of either party."). No other delays
are contemplated. Therefore, if no specific adjournments are
requested by the parties, a final decision must be rendered
within 45 days after the end of the 30-day resolution period.
34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j). The Court refers
to this requirement as the "45 Day Rule." With that overview,
the Court turns to Plaintiffs' allegations.

9

**DISCUSSION**

I.   Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

II.   Standard of Review

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.

Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").  "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its

face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

Rule 12(b)(1) governs the State Defendants' motion to the extent it challenges Plaintiffs' action on standing and immunity grounds.  "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  Id. (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d

Cir. 2006)).  A factual challenge attacks the allegations underlying the complaint's assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'"  Id. (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The Court of Appeals for the Third Circuit has held that motions to dismiss for lack of standing are best understood as facial attacks.  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) ("Defendants' Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the [a]mended [c]omplaints lack sufficient factual allegations to establish standing.").  In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts must apply the familiar 12(b)(6) standard.  Id. ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim"); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.").  Guided by In re Schering Plough and Baldwin, the Court finds it must apply the 12(b)(6) standard to Defendants' jurisdictional arguments.

III.   <u>Analysis</u>

   a. <u>Failure to Show Violation of the IDEA or New Jersey
      Regulations by the State Defendants</u>

The State Defendants move to dismiss the claims that
revolve around their alleged violation of the IDEA on the
grounds that Plaintiffs have failed to state claims.  The State
Defendants argue that they have sufficient procedures in place
to comply with the IDEA and Plaintiffs' complaint is really just
venting their discontent with the ALJ's decision.  With respect
to Count VIII and IX, they argue that there is no rule that a
due process hearing must be conducted within ten days of a
case's transmittal from the NJDOE to the OAL and that settlement
is encouraged under the IDEA.

It may be true that settlement may be encouraged under the
IDEA, but in making that argument the State Defendants skirt the
fact that the New Jersey Regulations do provide that the first
hearing should be approximately ten days after transmittal.
N.J.A.C. § 1:6A-9.1(a) ("Upon unsuccessful conclusion of the
resolution process or mediation, as provided in N.J.A.C. 6A:14-
2.7, the representative of the Office of Special Education
Programs shall immediately contact the Clerk of the Office of
Administrative Law and the Clerk shall assign a peremptory
hearing date. The hearing date shall, to the greatest extent
possible, be convenient to all parties but shall be

approximately 10 days from the date of the scheduling call."). Plaintiffs allege that they did not receive a hearing anywhere close to ten days after the transmittal of their case to the OAL — instead they received a settlement conference.  That is more than enough to state a plausible claim at this juncture.

Similarly, the State Defendant's attack on Count IX alleging a violation of the adjournment rule completely misses the fact that the IDEA only allows adjournments at the request or consent of the parties and Plaintiffs allege that there was no request or consent to some of the lengthy adjournments.  34 C.F.R. § 300.515(a); (ECF 26 at 63).

In the same vein, Plaintiffs have adequately pled in Count X that the procedures provided by the State Defendants did not adequately protect their discovery rights by not requiring VPS to provide discovery at least five days before the hearing.  The State Defendants are right that there is no rule or regulation that specifically states that discovery must be exchanged five days before the hearing without exceptions.  But in so arguing they miss the forest for the trees and the plain letter of the applicable regulations.  The IDEA makes clear that discovery should be exchanged freely and without delay before a hearing and that such disclosure occur not closer that five days before the hearing date.  See 20 U.S.C. § 1415(f)(2)(A) ("Not less than 5 business days prior to a hearing conducted pursuant to

paragraph (1), each party shall disclose to all other parties all evaluations completed by that date, and recommendations based on the offering party's evaluations, that the party intends to use at the hearing."); id. at § 1415(b)(1) (the procedures put in place by the state must provide "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child[.]"); 34 C.F.R. § 300.613 ("The agency must comply with a [discovery] request without unnecessary delay[.]")

New Jersey regulations mirror the federal regulations as they should.  See N.J.A.C. § 1:6A-10.1(c) ("Upon application of a party, the judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time.").  Further, the thrust of Count X is directed toward the State Defendants' overall failure to facilitate discovery in a timely manner.  Plaintiffs identify issues with specific discovery requests and the delays that the State Defendants allegedly facilitated.[3]  (ECF 26 at 100).

---

[3] Plaintiffs' allegations that the State Defendants violated New Jersey law on discovery, evidence, and generally the procedures set forth on due process hearings (Counts XI-XIII) are sufficiently supported factually and by specific references to the relevant provisions of the New Jersey Administrative Code. See N.J.A.C. 6A:14-2.7(j) (45-day period may only be extended if

In addition, Plaintiffs have adequately pled that the State Defendants failed to ensure the independence of the OAL (Count XV) and that ALJs were adequately trained (Count XIV).  The IDEA requires both that the due process hearing be conducted by an impartial hearing officer and that the state receiving federal funds under the IDEA put in place procedures to make sure that a fair hearing is conducted.  20 U.S.C. § 1415(f)(3); 34 C.F.R. § 300.511; and N.J.A.C. § 6A:14-2.7(k).

Plaintiffs have alleged that the OAL is so emmeshed in the NJDOE that they have not been able to get a fair and impartial hearing.  They also have alleged that the training of the ALJs assigned to due process hearings is so lacking that it violates the requirement that the hearings be conducted by an ALJ with requisite skill and knowledge so as to be capable of rendering a timely decision.  See 34 C.F.R. § 300.515(a) (states receiving federal funding "must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) . . . (1) A final decision is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties.").

The NJDOE has the overarching responsibility to ensure that the procedures for due process hearings run smoothly without

---

"specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute"); N.J.A.C. § 1:6A-1.1(a)(identifying evidentiary rules); N.J.A.C. § 1:6A-10.1(d) (outlining discovery rules).

actually adjudicating disputes itself.  The IDEA is organized such that the ALJs who conduct the due process hearings may not be NJDOE employees.  20 U.S.C. §1415 (f)(3)(A)(i).  But that very same statute makes clear that it is the NJDOE who is responsible for the infrastructure that creates such impartial due process hearings.  Id. at §1415(f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.")  Plaintiffs have outlined the training deficiencies of the ALJs and the ways that the OAL and the NJDOE are intertwined with sufficient facts to survive a motion to dismiss. (ECF 26 at 123 ("Upon information and belief, none of the ALJs receive any training on IDEA, its regulations, and the New Jersey regulations for special education due process cases. This is the fault of both NJDOE and the OAL as neither provides any training."); id. at 128 ("Since the budget and salaries of NJDOE and OAL employees are subparts of and determined by the larger budget of the executive branch, they are beholden to the same pot of money. This creates a personal and/or professional interest that conflicts with the ALJ's objectivity in special education due process hearings."))

Case 1:19-cv-12154-NLH-MJS   Document 72   Filed 03/22/22   Page 19 of 32 PageID: 954

The Court renders no opinion as to whether these allegations will ultimately be meritorious, only that they are sufficiently pled to survive a motion to dismiss.

The State Defendants also argue that Plaintiffs have not shown a systemic violation of the IDEA.[4]  The Court disagrees. First, the State Defendants seem to be overstating the pleading standard, arguing that Plaintiffs must "demonstrate" and "prove" their claims at this time.  (ECF 49 at 1, 16).  Plaintiffs need only state a plausible claim.  Malleus, 641 F.3d at 563. Second, to the extent that the State Defendants are suggesting that an individual plaintiff cannot prove a systemic violation, that argument misstates caselaw and fails to understand the scope of Plaintiffs' allegations. Reinholdson v. Minnesota, 346 F.3d 847, 851 (8th Cir. 2003) ("[T]rials of those individual claims may expose issues of systemic violation[.]")  The touchstone of a systemic violation is that it cannot be remedied by the administrative process because the issue is so pervasive. Brach v. Newsom, 2020 WL 6036764, at *8 (C.D. Cal. Aug. 21, 2020) ("A plaintiff alleging a systemic violation is not entitled to an exception if "it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the

---

[4] The State Defendants specifically tie this argument to Counts XI-XIII, but seem to be making a more global point about the pleading of systemic violations.  (ECF 49 at 14).

problem.")  Plaintiffs have alleged that the problems in how their due process matter was handled was rooted in widespread issues that make the system in place futile to remedy their concerns.  (See ECF 26 at 105).  Discovery on their individual matter certainly could bear out their concerns.[5]

### b. Whether Plaintiffs' IDEA Claims Against State Officials Must be Dismissed.

The State Defendants' argument that the counts alleging violation of the IDEA against state officials must be dismissed because the IDEA does not allow claims against individual officials has some support in case law.  See Taylor v. Altoona Area Sch. Dist., 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007) (discussing the IDEA and stating, "The United States Court of Appeals for the Third Circuit has recognized that Congress does not normally seek to impose liability on individuals when it places conditions on the receipt of federal funds by entities that employ such individuals.") (citing Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.2002)); R.S. v. Glen Rock Bd. of Educ., No. 14-CV-0024 SRC, 2014 WL 7331954, at *5 (D.N.J. Dec. 19, 2014).

That said, this Court acknowledges that "in many

---

[5] The State Defendants argue that Plaintiffs have not plausibly pled any procedural violation for Count III.  (ECF 49 at 13). As explained below, the Court will dismiss Count III with respect to the ALJ defendant on the grounds of judicial immunity. Count III otherwise only names VPS, who has not moved to dismiss the claim.

circumstances it is appropriate for a plaintiff to assert IDEA
and Rehabilitation Act claims against individuals in their
'official capacities' as school administrators, school district
personnel, or school board members[.]" New Jersey Prot. &
Advoc., Inc. v. New Jersey Dep't of Educ., 563 F. Supp. 2d 474,
492 (D.N.J. 2008).  To be sure, the court in New Jersey Prot. &
Advoc., Inc., ended up dismissing the claims against the
individuals named in their official capacities as duplicative of
the claims against the state.  Id.  It may indeed be the case
that such claims will turn out to be duplicative in this matter,
but at this early stage in litigation, the Court is not prepared
to dismiss the claims against the individual defendants on this
ground.  With the scope of the liability, if any, that may
actually fall to the NJDOE and the OAL unresolved at this point
in litigation, the Court will not dismiss the claims against the
individual defendants as duplicative.  P.V. ex rel. Valentin v.
Sch. Dist. of Philadelphia, 2011 WL 5127850, at *12 (E.D. Pa.
Oct. 31, 2011) ("While some courts have dismissed claims against
individual, official capacity defendants as redundant, they have
done so after satisfying themselves that the remaining entity
defendant(s) were willing to take responsibility for the
individual defendants' action.")

     c. Whether the ALJs Are Entitled to Judicial Immunity.

The State Defendants argue that the ALJs sued in this

matter are protected by judicial immunity and the Court agrees.
Plaintiffs' principal argument against this is that the law does
not recognize judicial immunity for state ALJs.  (ECF 51 at 37-
38).   At least one panel of the Third Circuit has recognized
judicial immunity for a state official acting in the capacity of
an ALJ.  Savadjian v. Caride, 827 F. App'x 199, 202 (3d Cir.
2020).  In addition, judicial immunity as a doctrine has been
understood to broadly insulate judicial officers for their acts
taken in a judicial capacity.  See Kaul v. Christie, 372 F.
Supp. 3d 206, 246 (D.N.J. 2019) ("Absolute judicial immunity
applies to all claims, whether official-capacity or personal-
capacity, that are based on judicial acts," which includes
administrative law judges, and the immunity is only stripped for
"nonjudicial actions" and "actions, though judicial in nature,
taken in the complete absence of all jurisdiction.") (citing
Mireles v. Waco, 502 U.S. 9, 12 (1991); Dongon v. Banar, 363 F.
App'x 153, 155 (3d Cir. 2010); Raffinee v. Comm'r of Soc. Sec.,
367 F. App'x. 379, 381 (3d Cir. 2010) (citing Butz v. Economou,
438 U.S. 478, 514 (1978)).  Accordingly, the claims against the
ALJs will be dismissed with prejudice.  Thompson v. Cobham, 2012
WL 2374724, at *2 (D.N.J. 2012) (citing Gary v. Gardner, 445 F.
App'x 465, 467 (3d Cir. 2011) (affirming dismissal with
prejudice of action barred by judicial immunity)).[6]

---

[6] The Court will also dismiss Count IV against the OAL for

d. Whether Plaintiffs' § 1983 Claims Must Be Dismissed.

The Court will dismiss the claims under § 1983 against the NJDOE and the OAL with prejudice[7] because they are arms of the state, and the state as not waived its Eleventh Amendment immunity.  Docherty v. Cape May Cty., 2017 WL 3528979, at *4 (D.N.J. Aug. 15, 2017) ("Thus, the Court dismisses the § 1983

---

failure to state a claim.  The provision of the IDEA allowing appeal of the underlying administrative decision is clear that the scope of any appeal is cabined by the allegations in the due process complaint.  20 U.S.C.A. § 1415(h)(2)(A) (stating that parties to a due process petition may appeal matters to the district court that were determined based on the underlying due process complaint).  This is not to say that Plaintiffs do not have other viable claims against the OAL only that the administrative appeal is not one of them.

[7] District courts "should freely give leave to amend when justice so requires."  Schomburg v. Dow Jones & Co., 504 F. App'x 100, 103 (3d Cir. 2012) (citing Rule 15(a)(2)) (internal alterations omitted).  "Thus, leave to amend ordinarily should be denied only when amendment would be inequitable or futile." (Id.) "[T]hese principles apply equally to *pro se* plaintiffs and those represented by experienced counsel."  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011) (quoting Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010)).  Courts have held amendment to be inequitable where the plaintiff already had an opportunity to amend the complaint.  Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000) ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint."); McMahon v. Refresh Dental Mgmt., LLC, 2016 WL 7212584, at *11 (W.D. Pa. Dec. 13, 2016) ("The court need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed.") (internal alterations and quotation marks omitted).  Here the Eleventh Amendment serves as an absolute bar and amendment of the claims would be futile.

and NJCRA claims for damages against Lanigan in his official capacity, based on Eleventh Amendment immunity."); <u>Rashid v. Lanigan</u>, 2018 WL 3630130, at *10 (D.N.J. July 31, 2018) ("Plaintiffs' claims seeking declaratory relief as to, and monetary damages from, Defendants in their official capacities are dismissed with prejudice as barred by Eleventh Amendment immunity[.]")

And courts in this district have made clear that the NJDOE and the OAL are arms of the state for Eleventh Amendment purposes. <u>Wright v. New Jersey/Dep't of Educ.</u>, 115 F. Supp. 3d 490, 494 (D.N.J. 2015) ("The Department of Education is considered an arm of the state government for purposes of determining sovereign immunity under the Eleventh Amendment."); <u>ASAH v. New Jersey Dep't of Educ.</u>, 2017 WL 2829648, at *7 (D.N.J. June 30, 2017) ("For the purposes of the Eleventh Amendment, the DOE is an arm of the state government."); <u>Rodrigues v. Fort Lee Bd. of Educ.</u>, 458 F. App'x 124, 127 (3d Cir. 2011) ("The Office of Administrative Law is a state agency. . . and is thus immune from suit under the Eleventh Amendment[.]" Because Eleventh Amendment immunity bars Plaintiffs' claims against the NJDOE and the OAL, the Court will dismiss that count without leave to amend.

The Court will not, however, dismiss the claim against the Commissioner at this time.  An exception to the Eleventh

24

Amendment is a suit against an official in their official
capacity seeking prospective injunctive relief.  While not
pleaded artfully, Plaintiffs' complaint essentially asks the
Court to remedy the procedural problems with the dispute
resolution system so that Plaintiffs can get a fair result as
required under the law and perhaps bring other claims.  (See ECF
26 at 146 ("Defendants have denied Plaintiffs their right to
timely assert other claims because of the delays and systemic
flaws."))  Where there is an ongoing violation of federal law
and the relief is prospective, the Court may order it.  Delaware
River Joint Toll Bridge Comm'n v. Sec'y Pennsylvania Dep't of
Lab. & Indus., 985 F.3d 189, 193-94 (3d Cir. 2021), cert. denied
sub nom. Berrier v. Delaware River Joint Toll Bridge Comm'n, 142
S. Ct. 109 (2021) (determining whether to grant the relief
"requires us to 'conduct a straightforward inquiry into whether
the complaint alleges an ongoing violation of federal law' and
whether it 'seeks relief properly characterized as
prospective.'") (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n
of Md., 535 U.S. 635, 645 (2002)).

    While the State Defendants are correct that the IDEA does
not allow Plaintiffs to use the IDEA to use § 1983 to remedy
violations of the IDEA, it does not bar suit under § 1983 based
on separate substantive rights.  First, 20 U.S.C. § 1416(*l*)
states:

> Nothing in this chapter shall be construed to restrict or
> limit the rights, procedures, and remedies available under
> the Constitution, the Americans with Disabilities Act of
> 1990, title V of the Rehabilitation Act of 1973, or other
> Federal laws protecting the rights of children with
> disabilities, except that before the filing of a civil
> action under such laws seeking relief that is also
> available under this subchapter, the procedures under
> subsections (f) and (g) shall be exhausted to the same
> extent as would be required had the action been brought
> under this subchapter.

Subsection (*l*) specifically leaves open the avenue for

plaintiffs to sue based on other substantive laws if the relief

sought was distinct from what is available under the IDEA.  A.W.

v. Jersey City Pub. Schs., 486 F.3d 791, 798 (3d Cir. 2007) ("By

preserving rights and remedies "under the Constitution," section

1415 [(*l*)] does permit plaintiffs to resort to section

1983 for *constitutional* violations, notwithstanding the

similarity of such claims to those stated directly under IDEA.")

(emphasis in original).  Even though Plaintiffs mention

provisions of the IDEA as background for their § 1983 claim,

they cite to the Fourteenth Amendment as the underlying basis.[8]

(ECF 126 at 146).  Courts have held that there is a property

interest in education and that therefore, prior to the

deprivation of such interest, a plaintiff must be provided with

a meaningful opportunity to be heard prior to the deprivation in

order to comport with the Fourteenth Amendment.  Hamilton v.

---

[8] Plaintiffs also cite to the Fourth Amendment without further
elaboration.  And such claim will be dismissed without
prejudice.

Radnor Twp., 502 F. Supp. 3d 978, 990 (E.D. Pa. 2020) ("The
Fourteenth Amendment creates a guarantee of fair procedure
whereby an individual can assert that she was deprived of a
life, liberty, or property interest without due process of
law.") (internal quotation marks omitted); Garcia v. Capistrano
Unified Sch. Dist., 2018 WL 6017009, at *12 (C.D. Cal. Mar. 30,
2018) ("Further, a plaintiff can bring a Section 1983 action
alleging the deprivation of procedural due process in state
special education administrative proceedings."); K.A. ex rel.
J.A. v. Abington Heights Sch. Dist., 28 F. Supp. 3d 356, 367
(M.D. Pa. 2014) (noting property interest in public education);
Abernathy v. Indiana Univ. of Pennsylvania, 2013 WL 3200519, at
*1 (W.D. Pa. June 18, 2013) (noting the need for a meaningful
opportunity to be heard before the deprivation of education);
Dommel Properties, LLC v. Jonestown Bank & Tr. Co., 2013 WL
1149265, at *9 (M.D. Pa. Mar. 19, 2013) ("The fundamental
requirement of due process is the opportunity to be heard 'at a
meaningful time and in a meaningful manner."). Thus,
maintaining a separate claim under the Fourteenth Amendment to
be vindicated via § 1983 is in accordance with § 1415(*l*) so long
as the claim is ripe.[9]

---

[9] See C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 73 n.13 (3d
Cir. 2010) ("As a matter of chronology, a state administrative
complaint could not seek relief for a due process violation that
had not yet occurred. Thus, any claim for deprivation of

e. Violation of § 504 and the ADA.

The NJDOE also moves to dismiss Count XVII, violation of § 504, and Count XVIII, violation of the ADA.  They argue that dismissal of Counts XVII and XVIII is appropriate because the "amended complaint is utterly bereft of any factual allegations that State Defendants denied Plaintiffs' participation in or the ability to receive the benefits of any State program or activity, and it similarly fails to allege that they were subject to discrimination under any program or activity (ECF 49 at 34).  Plaintiffs counter that the State Defendants retaliated against them for seeking to enforce L.D.'s education rights by stonewalling the due process hearing procedures.  (ECF 51 at 44).

To state a claim of violation Title II of the ADA or § 504, "a plaintiff must show that he is a qualified individual with a disability; that he was excluded from a service, program, or activity of a public entity; and that he was excluded because of his disability."  Disability Rts. New Jersey, Inc. v. Comm'r, New Jersey Dep't of Hum. Servs., 796 F.3d 293, 301 (3d Cir. 2015); Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288 (3d Cir. 2019) (noting that the substantive standards for both

procedural due process in the state administrative proceedings cannot be redressed by the remedial provisions of the IDEA; the aggrieved party must file a separate § 1983 action in the District Court, supported by appropriate factual allegations.")

claims are the same).  The parties do not appear to dispute that L.D. is a qualified individual with a disability.  Rather, the crux of the dispute is whether Plaintiffs were deprived of something they otherwise were entitled to as a result of L.D.'s disability.  The complaint clearly outlines the NJDOE and OAL's responsibilities to provide impartial due process hearings and that "[n]umerous actions taken by ALJs Buono and Calemmo were made in retaliation for Plaintiffs exerting their legal rights under IDEA[.]" (ECF 126 at 139).  This, with the rest of the allegations in the complaint, is enough to satisfy the Court that Plaintiffs are entitled to proceed with their ADA and § 504 claims.  Indeed, the Supreme Court has noted that an action may lie for violation of the ADA and § 504 where the facts arise out of an alleged violation of the IDEA.  Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 750, 197 L. Ed. 2d 46 (2017) ("[T]he IDEA does not prevent a plaintiff from asserting claims under such laws even if. . .those claims allege the denial of an appropriate public education (much as an IDEA claim would).") Plaintiffs' complaint alleges that the NJDOE's flawed procedures pervaded the dispute resolution system to the extent that they effectively barred L.D. from receiving the same educational benefits as other children and retaliated against Plaintiffs for trying to assert their rights.  (See ECF 26 at 139).

The State Defendants characterize the allegations of

violation of § 504 and the ADA as conclusory, focusing on
statements like the above-quoted allegations.  Plaintiffs
certainly could have pled their claims more artfully, neatly
tying together how the State Defendants' flawed procedures
constituted discrimination or some sort of disparate impact in
compact phraseology.  But this Court reads the allegations in
the complaint as a whole and the allegations read in that light
tell a story of due process procedures so deficient that
Plaintiffs were not able to place their child in the right
educational setting or seek relief without retaliation, a
benefit that non-disabled children were readily receiving.
Destro v. Hackensack Water Co., 2009 WL 3681903, at *2 (D.N.J.
Nov. 2, 2009) ("The Court must consider the Complaint in its
entirety and review the allegations as a whole and in context.")
Thus, the Court will not dismiss the claims based on § 504 and
the ADA.

    f. <u>Whether Federal Preemption Applies</u>

    Plaintiffs assert a count for "federal preemption",
contending that there "is a direct conflict between the scheme
under federal IDEA law for resolving special education disputes
and NJDOE's system under the New Jersey Administrative Code for
how New Jersey handles special education disputes
as discussed at length in preceding allegations of this
Complaint." (ECF 126 at 116.)  The State Defendants argue that

Plaintiffs' contention that the briefing schedule for motions and the refusal by State Defendants to enforce the 10 day Peremptory Hearing regulation both directly conflict with the IDEA fails because neither conflicts with the IDEA.  The State Defendants argue that the IDEA and New Jersey regulations do not provide for guidelines regarding motion practice in due process hearings, and the 10-day rule is not contained in the IDEA. Thus, the State Defendants argue that the IDEA cannot preempt state law on these issues.

The Court finds that any conflicts between the State's procedures as they relate to the IDEA will be more appropriately resolved after discovery regarding those procedures as a whole, and a fuller record is provided upon which this Court may opine on the viability of Plaintiffs' federal preemption count.  See, e.g., Virtual Studios v. Couristan, Inc., 2011 WL 1871106, at *3 (D.N.J. 2011) (denying the defendant's argument that the plaintiff's state law claim was preempted by federal copyright law because the court was required to perform a qualitative analysis to make that determination, and finding that it would be in a far better position to make such a qualitative assessment once the record in the matter had been more fully developed, rather solely on the plaintiff's complaint).

## CONCLUSION

For the reasons expressed in this Opinion, the State

Defendants' motion to dismiss (ECF 49) will be granted in part and denied in part.

    An appropriate Order will be entered.


Date:  March 21, 2022                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.