**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

M.D. and S.H., individually
and on behalf of their minor
child L.D.,

        Plaintiffs,

    V.

VINELAND CITY BOARD OF
EDUCATION d/b/a VINELAND CITY
PUBLIC SCHOOLS; NEW JERSEY
DEPARTMENT OF EDUCATION;
KEVIN DEHMER, Interim
Commissioner of Education;
and NEW JERSEY OFFICE OF
ADMINISTRATIVE LAW,

        Defendants.

No. 1:19-cv-12154-NLH-MJS

**OPINION**

---

ROBERT CRAIG THURSTON
THURSTON LAW OFFICES LLC
433 RIVER ROAD - SUITE 1315
HIGHLAND PARK, N.J. 08904

    *Counsel for Plaintiffs*

JACLYN MICHELLE FREY
KERRY SORANNO
LAURIE LEE FICHERA
OFFICE OF NEW JERSEY ATTORNEY GENERAL
RICHARD J. HUGHES JUSTICE COMPLEX
25 MARKET STREET
PO BOX 112
TRENTON, N.J. 08625

    *Counsel for the State Defendants*

JAY D. BRANDERBIT
KENT & MCBRIDE, P.C.
1617 JFK BOULEVARD
SUITE 1140
PHILADELPHIA, PA. 19103

    *Counsel for Vineland City Board of Education*

**HILLMAN**, District Judge

Pending before the Court are the motions for partial summary judgment of Plaintiffs M.D. and S.H. (collectively "Plaintiffs") against Defendants New Jersey Department of Education ("NJDOE"), Interim Commissioner of Education Kevin Dehmer, and the New Jersey Office of Administrative Law ("NJOAL") (collectively "State Defendants"), (ECF 106), and Defendant Vineland City Board of Education d/b/a Vineland City Public Schools ("VPS"), (ECF 108), and the parties' joint motion to seal, (ECF 111).  For the reasons expressed below, the parties' motion to seal will be granted and Plaintiffs' motions for partial summary judgment will be denied without prejudice.

## I.   Background

L.D. is a minor child with multiple disabilities who is eligible for special education and related services.  (ECF 108-2 at ¶ 4; ECF 116-1 at ¶ 4).  M.D. and S.H. are L.D.'s parents who reside in Vineland, New Jersey, making VPS their Local Educational Agency ("LEA") as defined by the Individuals with Disabilities Education Act ("IDEA").  (ECF 108-2 at ¶¶ 1, 5-6; ECF 116-1 at ¶¶ 1, 5-6).

On January 14, 2015, Liya Beyderman, M.D. of NeMours duPont Pediatrics recognized L.D.'s diagnoses of "Neurological disorder NOS consistent with Tics and associated with a DSM-V of ADHD-

combined type complicated by behavioral dysregulation, fine motor skill delays, and anxiety." (ECF 108-4 at 2). In addition, L.D. was later diagnosed with vision issues including "convergence excess, oculomotor dysfunction (deficiency of pursuits and saccades), and visual processing deficits" that could manifest in double vision, poor reading comprehension, headaches, and eye strain. (Id. at 3-4).

An evaluation in October 2015 showed that L.D. struggled in areas including math fluency and sentence composition. (Id. at 4-5). L.D. attended Vineland Public Charter School ("VPCS") during the 2015-16 school year and a Section 504 plan incorporating Dr. Beyderman's diagnoses was implemented in 2016 and was to be carried over for the 2016-17 school year. (Id. at 5-7). L.D. did not meet grade-level standards in Language Arts during his final marking period of fourth grade and teachers across multiple subjects commented on L.D.'s difficulties with effort and focus. (Id. at 8-9).

Plaintiffs enrolled L.D. in VPS for the 2016-17 school year and a Section 504 meeting was held in September 2016 and a Section 504 plan similar to the one used at VPCS was implemented for L.D., including incorporation of Dr. Beyderman's diagnoses. (Id. at 10-13). On December 5, 2016, following an October 2016 progress report that indicated that L.D. exhibited poor time management and did not complete assignments, S.H. wrote to Mary

3

Shadinger and the Petway Elementary School Child Study Team referencing L.D.'s diagnoses of Attention-Deficit/Hyperactivity Disorder ("ADHD"), dysgraphia, and anxiety; raising concerns about L.D.'s ability to timely complete written work; and requesting learning and occupational therapy ("OT") evaluations. (Id. at 13-15).  A December 6, 2016 Child Study Team Referral Form indicated that L.D. was receiving first-marking-period grades of C in Language Arts, Mathematics, Science, and Social Studies and that he was being referred due to challenges with focusing and completing tasks in the time allotted.  (Id. at 16-17).  During a December 22, 2016 meeting, VPS proposed that an evaluation of L.D. was not warranted.  (Id. at 19).

L.D. received C grades in Language Arts and Science during the second marking period and a D in Mathematics, the latter down from a C during the first marking period.  (Id. at 27).  S.H. emailed Heidi Nieves, school psychologist for VPS, on February 16, 2017 seeking re-referral for testing and special-education services.  (Id. at 32).  The 2016-17 PARCC standardized test was administered that spring and L.D.'s Mathematics score met expectations while his Language Arts/Literacy score did not; ranked him below cross-state, state, district, and school averages; and exhibited the lowest possible score in Writing.  (Id. at 54-55).

During a meeting held on March 16, 2017, the VPS

4

Individualized Education Program ("IEP") Team referenced L.D.'s diagnoses of ADHD, dysgraphia, and anxiety; determined that L.D. was suspected to have a disability that adversely impacted his educational performance; and authorized educational, psychological, social history, and OT evaluations, to which Plaintiffs consented.  (Id. at 33-35).

Stephanie Cooper, OTR/L of VPS performed an OT evaluation on April 26, 2017 and concluded that L.D.'s visual-motor-integration delays were insufficient to affect his education and did not recommend school OT.  (Id. at 38-39).  A private OT evaluation conducted by Tameka L. Johnson, MOT, OTR/L of NeMours duPont Pediatrics on April 10, 2017 using the WOLD Sentence Copy Test and King Devick Test indicated that L.D.'s saccadic eye movements interfered with his ability to read and the speed and legibility with which he was able to write and set several short-term goals.  (Id. at 35-37).

On June 8, 2017, VPS issued a notice for continuation of accommodation via a Section 504 plan – as of that date the authorized evaluations had not all been completed, L.D. had not been deemed eligible for special-education services, and an IEP was not in place.  (Id. at 40-41).  L.D. received final grades of a D in Mathematics and C in Language Arts, Science, and Social Studies, the latter of which he performed at below grade level.  (Id. at 41-42).

Nieves, Bernice Longini – VPS's learning disabilities teacher consultant, and Leona Porter – social worker for VPS, performed a psychological evaluation on July 11, 2017 that noted a discrepancy between L.D.'s potential as evidenced by his IQ and his academic performance and that his ADHD, dysgraphia, and anxiety "appear[ed] to be impacting him to the point that he [wa]s not progressing in a general education setting." (Id. at 43-45). On that same day, Porter conducted a social-history evaluation that similarly found that L.D.'s ADHD, dysgraphia, and anxiety appeared to be affecting him and his ability to progress in a general education setting. (Id. at 46). Longini performed an educational evaluation on July 12, 2017 that showed that L.D.'s composite scores in written expression and math fluency ranked in the twelfth and second percentiles, respectively, and found that L.D.'s ADHD, dysgraphia, and anxiety seemed to affect his progress in a general education setting. (Id. at 47-48).

An IEP meeting for L.D.'s sixth-grade year was held on August 16, 2017 during which L.D. was deemed eligible for special education and related services on account of his ADHD, dysgraphia, and anxiety diagnoses. (Id. at 51). The IEP established six goals – one in Reading, one in Writing, and four in Mathematics; set forth that Plaintiffs would be informed of progress every two months; and provided daily in-class resources

6

for multiple subjects and door-to-door transportation but did
not include Extended School Year ("ESY") services.  (Id. at 53-
54).  The IEP expressly referenced multiple evaluations, but not
Johnson's April 10, 2017 OT evaluation and August 14, 2017
letter.  (Id. at 52).

Don D. Blackburn, O.D., of Delaware Vision Academy
conducted a vision evaluation of L.D. on August 25, 2017.  (Id.
at 55-56).  The evaluation concluded that L.D.'s vision
deficiencies impacted his ability to reach his potential and may
have resulted in his changing the beginnings or endings of
words, skipping or repeating lines of text, and struggling to
shift his attention from the chalkboard to his book, among other
effects.  (Id. at 56-57).

L.D. was disciplined for multiple behavioral infractions
during the 2017-18 school year, including an incident that led
to referral to the Child Study Team.  (ECF 108-5 at 20-24).  A
March 14, 2018 appointment with Susan J. Blumenfeld of NeMours
duPont Pediatrics confirmed diagnoses of neurological disorder,
ADHD, dysgraphia, and anxiety.  (ECF 108-6 at 3-4).  L.D. scored
a 727 in Language Arts/Literacy on his 2017-18 PARCC
standardized test administered in Spring 2018 – below school,
district, state, and cross-state averages – including the lowest
possible score in Writing.  (ECF 108-5 at 57-58).  L.D.'s
overall score of 757 in Mathematics placed him on track to

proceed to the next grade level, though his expression of
mathematic reasoning did not meet expectations, and L.D.'s 2017-
18 scores were overall below his 2016-17 scores with the
exception of Writing – which was the lowest possible both years.
(Id. at 59-60; ECF 108-6 at 1).

S.H. wrote to Theresa Godlewski, director of special
education, on February 22, 2018 expressing disagreement with
district evaluations and requesting an Independent Educational
Evaluation ("IEE")/ neuropsychological evaluation with Margaret
J. Kay, Ed.D. NCSP, FABPS be paid for at public expense.  (ECF
108-4 at 121-22).  Godlewski replied on March 1, 2018 that
evaluations would be conducted in accordance with New Jersey
Administrative Code 6A:14-2.5(c)(3) and Kay could not conduct
the evaluation as she did not hold a New Jersey certification.
(Id. at 132).  Godlewski's response also included a list of
potential neuropsychological and OT/speech evaluators with a
link to additional possible agencies and a notation that
"[o]ther NJ Certified Neuropsychologists may be used but we will
need to secure a copy of their certification and W-9."  (Id. at
133-34).  Plaintiffs' then-counsel wrote to Godlewski on March
29, 2018 objecting to the denial of an evaluation with Kay.
(ECF 108-5 at 10-12).

Plaintiffs themselves paid for an evaluation with Kay at a
cost of $4,000.  (ECF 108-7).  Kay found that, while

8

intelligent, L.D.'s academic performance suffered from issues with information processing, impulse control, involuntary tics, and defiant behaviors – with written work causing the most difficulty.  (Id. at 12-13).  Kay suggested that L.D. be medically evaluated for Tourette Syndrome and included recommendations for accommodations and specially designed instruction.  (Id. at 12-21).

An IEP meeting was held on April 17, 2018 during which VPS rejected the possibility of out-of-district placement, L.D. was declared ineligible for ESY services, and a plan was not ultimately implemented.  (ECF 108-2 at ¶¶ 179-80; ECF 109; ECF 116-1 at ¶¶ 179-80).  A subsequent meeting was held on June 20, 2018, the draft IEP for which stated that out-of-district placement and ESY services were not warranted and to which Plaintiffs did not consent.  (ECF 109-1 at 5-6, 20).  Plaintiffs thereafter unilaterally withdrew L.D. from enrollment at VPS and filed a due process complaint seeking reimbursement of tuition, transportation, and other costs related to L.D.'s enrollment at Centreville-Layton School ("CLS") in Delaware; compensatory education; and reimbursement of the cost of Kay's IEE and expert witness fees.  (ECF 108-8 at 2; ECF 109-2).  VPS did not respond to the withdrawal or due process complaint.  (ECF 108-2 at ¶ 212; ECF 116-1 at ¶ 212).

The parties did not agree to mediate and a hearing before

Administrative Law Judge ("ALJ") Dean J. Buono was scheduled for August 2, 2018. (ECF 106-4 at 28-31). Counsel for VPS requested an adjournment to accommodate a separate trial and the hearing was postponed to August 16, 2018. (Id. at 51, 54). ALJ Buono held a settlement conference with the parties on August 16, 2018, the parties did not settle, and the case was reassigned to ALJ Kathleen Calemmo. (ECF 106-2 at ¶ 21; ECF 106-5 at 1; ECF 115-1 at ¶ 21).

Hearing dates before ALJ Calemmo were scheduled for November 2, November 13, November 27, and November 30, 2018, with the November 2 and November 27 dates later deemed unnecessary. (ECF 106-5 at 5-7). Kay provided an expert report and testified at a combined cost of $7,000.17. (ECF 108-8 at 7). A telephone conference was thereafter scheduled for December 13, 2018. (106-5 at 18-19). The parties submitted closing briefs and ALJ Calemmo held another conference call on January 16, 2019. (ECF 106-6 at 1-7). On February 11, 2019, ALJ Calemmo issued a final decision denying compensatory education and reimbursement of L.D.'s placement at CLS and Kay's IEE. (ECF 108-4 at 74-120).

The present action followed. (ECF 1). Relevant to the present motions, the amended complaint alleges legal error in the standard applied for whether a free appropriate public education ("FAPE") was provided (Count 1), denial of a FAPE

10

(Count 2), IDEA procedural violations (Count 3), systemic violation of the ten-day peremptory hearing date (Count 8), systemic violation of the adjournment rule (Count 9), systemic violation of the forty-five day rule amounting to denial of a FAPE (Count 20), and procedural violations of the IDEA (Count 21).  (ECF 26 at ¶¶ 224-234, 279-314, 488-517).  In a March 21, 2022 opinion and order the Court granted State Defendants' motion to dismiss in part, including claims advanced against individual ALJs.  (ECF 72 at 21-22; ECF 73).

Plaintiffs filed the pending motions for summary judgment, (ECF 106; ECF 108), to which Defendants opposed (ECF 115; ECF 116; ECF 120) and Plaintiffs replied, (ECF 121; ECF 122; ECF 123).

## II. Discussion

### A. Jurisdiction

The Court exercises original jurisdiction over Plaintiffs' claims brought under federal law pursuant to 28 U.S.C. § 1331. It exercises supplemental jurisdiction over Plaintiffs' state-law claims.  See 28 U.S.C. § 1367(a).  Further, the Court has jurisdiction to review the administrative decision below pursuant to the provisions of the IDEA.  See 20 U.S.C. § 1415(i)(2); see also K.E. v. N. Highlands Reg'l Bd. of Educ., 840 F. App'x 705, 709 n.2 (3d Cir. 2020).

**B. Motions for Summary Judgment**

The Federal Rules of Civil Procedure dictate that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine when "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and a fact is "'material' if it 'might affect the outcome of the suit under the governing law.'" See Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Facts and evidence are to be viewed in the light most favorable to the nonmovant. Id.

These familiar principles apply here, see Moorestown Twp. Bd. of Educ. v. S.D., 811 F. Supp. 2d 1057, 1064-65 (D.N.J. Sept. 15, 2011); however, district courts apply what is referred to as "'modified de novo' review" when presented with appeals of administrative decision under the IDEA, see D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010) (quoting P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 734 (3d Cir. 2009)). Under this standard, "[f]actual findings from the administrative proceedings are to be considered prima facie correct" and courts are obligated to explain any departure from those findings. Id. (quoting P.P., 585 F.3d at 734). An ALJ's legal determinations, however, are reviewed de novo. S.D., 811 F. Supp. 2d at 1064.

The appropriateness of an IEP is a question of fact.  D.S., 602 F.3d at 564.

A court's decision is to be based on the evidence as developed at the administrative proceedings unless additional evidence is presented.  See M.G. v. N. Hunterdon-Voorhees Reg'l High Sch. Dist. Bd. of Educ., 778 F. App'x 107, 110 (3d Cir. 2019) (citing 20 U.S.C. § 1415(i)(2)(C)).  "The party challenging an administrative decision bears the burden of persuasion and 'faces the additional hurdle of overcoming a presumption that the Hearing Officer's findings were correct.'" Id. (quoting Andrew M. v. Del. Cnty. Off. of Mental Health & Retardation, 490 F.3d 337, 345 (3d Cir. 2007)); see also Ridley School Dist. v. M.R., 680 F.3d 260, 270 (3d Cir. 2012) ("[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged.")

## III. Analysis

### A. IDEA Procedural Safeguards

Plaintiffs' brief supporting their motion for partial summary judgment against State Defendants references multiple procedural safeguards including LEAs' obligation to respond to due process complaints, New Jersey's ten-day peremptory hearing rule, and regulations relating to adjournments and the forty-five-day timeline for final decisions.  (ECF 106-1 at 12-13).

The Court briefly summarizes these procedures for clarity.

The IDEA requires procedures providing an opportunity for parties to file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A); see also S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 257 (3d Cir. 2013) ("Children with disabilities (and their parents) who claim violations of the IDEA can file a complaint with a due process hearing officer." (citing 20 U.S.C. § 1415(b)(6))).  If the LEA did not previously provide the parent with written notice regarding the subject matter of the due process complaint, the LEA must send a response within ten days of receiving the complaint explaining why the agency proposed or refused to take the relevant action and describing the alternatives considered by the IEP team and why they were rejected; each evaluation procedure, assessment, record, or report relied upon; and the factors relevant to the LEA's proposal or refusal.  20 U.S.C. § 1415(c)(2)(B)(i)(I); see also N.J.A.C. 6A:14-2.7(e) ("When a parent requests a due process hearing . . . and the district board of education has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process request, the district board of education shall send a written response to the parent

within 10 days of receiving the petition.").

Once a due process complaint is filed, the parties have a thirty-day resolution period to settle the matter to the parents' satisfaction.  See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b).  This period may be waived by the parties. See 20 U.S.C. § 1415(f)(1)(B)(i); C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 72 n.12 (3d Cir. 2010).  If the parties do not arrive at a resolution within thirty days, "the due process hearing may occur, and all of the applicable timelines for a due process hearing . . . shall commence," 20 U.S.C. § 1415(f)(1)(B)(ii); see also 34 C.F.R. § 300.510(b)(1), and the case is transmitted to the NJOAL, N.J.A.C. 6A:14-2.7(h)(4).

The Office of Special Education Programs is to contact the Clerk of the NJOAL for a peremptory hearing date that "shall, to the greatest extent possible, be convenient to all parties but shall be approximately 10 days from the date of the scheduling call."  N.J.A.C. 1:6A-9.1(a).  A final decision must be reached and mailed to the parties within forty-five days of the expiration of the thirty-day period.  34 C.F.R. § 300.515(a); see also N.J.A.C. 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period . . . .").  Both state and federal law contemplate adherence to the forty-five-day timeline absent a request for adjournment or

extension by the parties.  See 34 C.F.R. § 300.515(c); N.J.A.C. 6A:14-2.7(j); see also C.P. v. N.J. Dep't of Educ., No. 19-12807, 2022 WL 3998700, at *3 (D.N.J. Sept. 1, 2022) ("[I]f no specific adjournments are requested by the parties, a final decision must be rendered within 45 days after the end of the 30-day resolution period.").

An IDEA procedural violation may rise to a denial of a FAPE, but "only if such violation causes substantive harm to the child or his parents."  C.H., 606 F.3d at 66 (quoting Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755, 765 (6th Cir. 2001)); see also D.S., 602 F.3d at 565 ("A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." (citing Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 (2007))).  Courts reviewing a parent's challenge to whether their child was provided a FAPE "must (1) consider whether the school district complied with the IDEA's procedural requirements and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits,'" with the focus being the appropriateness of the IEP at the time it was developed.  D.S., 602 F.3d at 564-65 (quoting Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 249 (3d Cir.

16

2009)); _see also_ _M.A. v. Jersey City Bd. of Educ._, 592 F. App'x

124, 130 (3d Cir. 2014) (noting that "[t]he 'primary mechanism

for delivering a FAPE' is the IEP" (quoting _M.R._, 680 F.3d at

269)).  Relief depends on the type of violation – a school

district's purely procedural violation may entitle a plaintiff

to injunctive relief for prospective compliance while a

district's denial of a FAPE may entitle a plaintiff to

compensatory relief such as compensatory education or tuition

reimbursement.  See _C.H._, 606 F.3d at 66.

### B. Plaintiffs' Motion for Partial Summary Judgment Against State Defendants (ECF 106)

Plaintiffs seek entry of summary judgment against all State

Defendants as to Counts 8, 9, and 20 of the amended complaint

and Count 21 as to the NJDOE and NJOAL.  (ECF 26 at ¶¶ 279-314,

488-517; ECF 106; ECF 106-1 at 1).[1]  In their supporting brief,

Plaintiffs cite State Defendants' duty to ensure that procedural

safeguards are established and maintained and monitor and

enforce LEAs' compliance with them.  (ECF 106-1 at 10-12).

Specifically, Plaintiffs assert that NJDOE failed to enforce

---

[1] Plaintiffs also seek summary judgment against State Defendants
as to Count 1 of the amended complaint.  (ECF 106).  Count 1 of
the amended complaint names only VPS and ALJ Calemmo.  (ECF 26
at ¶¶ 224-27).  The Court has previously dismissed Plaintiffs'
claims against individual ALJs, (ECF 72 at 21-22; ECF 73), which
the parties acknowledged in a subsequent stipulation, (ECF 82).
It therefore does not appear to the Court that Plaintiffs have a
surviving claim against State Defendants as to Count 1.

VPS's obligation to file a response to their due process complaint and Plaintiffs were entitled to default,[2] the practice of holding settlement conferences rather than peremptory hearings violates New Jersey Administrative Code, several adjournments were ordered without the request of either party, and these and other violations resulted in a months-long delay in issuing a final decision that violated state and federal law ensuring a decision within forty-five days of the resolution period.  (Id. at 14-22).

Before reaching the merits of Plaintiffs' claims, State Defendants assert that they have not had the opportunity to

---

[2] Plaintiffs and VPS do not dispute that VPS did not respond to Plaintiffs' due process complaint.  (ECF 106-2 at ¶ 6; ECF 115-1 at ¶ 6).  If an LEA has not previously provided parents with a written notice regarding the subject matter of the due process complaint, it "shall, within 10 days of receiving the complaint, send to the parent a response," that includes an explanation why the agency proposed or refused to take the relevant action; other options the IEP considered and why they were rejected; a description of each evaluation, assessment, record, or report relied upon; and a description of the factors underlying the LEA's proposal or refusal.  20 U.S.C. § 1415(c)(2)(B)(i)(I).  The Ninth Circuit has persuasively held that a school district's failure to respond to a due process complaint may not amount to denial of a FAPE, but nonetheless violates the IDEA and due process.  M.C. ex rel. M.N. v. Antelope Valley Union High Sch. Dist., 858 F.3d 1189, 1199 (9th Cir. 2017).  A court within the Ninth Circuit subsequently ruled that a plaintiff may waive a challenge that a district failed to respond to a due process complaint when that fact is known, but not raised, at the due process hearing.  L.B. v. W. Contra Costa Unified Sch. Dist., No. 16-cv-04382, 2018 WL 4029286, at *13 (N.D. Cal. Aug. 23, 2018).  The Court denies summary judgment here on other grounds; however, any renewed motion and opposition should advise why Plaintiffs' challenge was or was not waived below.

conduct discovery and cannot verify material facts, citing Federal Rule of Civil Procedure 56(d).  (ECF 120 at 10-11). Summary judgment is rarely appropriate when discovery is incomplete, State Defendants argue.  (Id.).

Plaintiffs reply that the counts for which they seek summary judgment pertain to the administrative record and how the case proceeded and thus discovery is unnecessary, Section 1415(i)(2) applies rather than Rule 56, and State Defendants' arguments must therefore fail.  (ECF 123 at 4-5).  The Court is not so convinced.

First, as noted by a court in this District faced with a case in a similar procedural posture, Rule 56 applies even in cases in which administrative decisions are to be reviewed pursuant to 20 U.S.C. § 1415(i)(2).  See S.D., 811 F. Supp. 2d at 1064-65 ("Because this matter is pending before the Court on motions for summary judgment, the well-settled principles of summary judgment also apply." (citing Bd. of Educ. of Montgomery Cnty. v. Hunter, 84 F. Supp. 2d 702, 705 n.2 (D. Md. Feb. 16, 2000)).  Plaintiffs themselves cite S.D. as the applicable standard of review.  (ECF 106-1 at 7).  The Third Circuit Court of Appeals has found that "an IDEA action filed in federal district court is properly characterized as an original 'civil action,' not an 'appeal'" and is thus governed by the Federal Rules of Civil Procedure.  Jonathan H. v. The Souderton Area

19

Sch. Dist., 562 F.3d 527, 529 (3d Cir. 2009) (citing 20 U.S.C. §
1415(i)(2)(A) and Kirkpatrick v. Lenoir Cnty. Bd. of Educ., 216
F.3d 380, 387-88 (4th Cir. 2000)) (discussing compulsory
counterclaims).

The Federal Rules of Civil Procedure provide that a court
may defer or deny a motion, permit time for discovery, or enter
other orders when a nonmovant demonstrates that they are unable
to present facts essential to their opposition.  Fed. R. Civ. P.
56(d).  "If discovery is incomplete, a district court is rarely
justified in granting summary judgment, unless the discovery
request pertains to facts that are not material to the moving
party's entitlement to judgment as a matter of law."  Shelton v.
Bledsoe, 775 F.3d 554, 568 (3d Cir. 2015) (citing Doe v.
Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007)).

Here, State Defendants' opposition has been accompanied by
the declaration of Carolyn Labin,[3] deputy attorney general,
indicating that there had been discussions about consolidating
discovery between this and other matters and using discovery
from C.P. v. New Jersey Department of Education, 1:19-cv-12807;
discovery orders had not been issued; and discovery was on hold
pending ongoing settlement discussions and potential
consolidation of discovery.  (ECF 120-4 at ¶¶ 7-11, 13-14, 16-

---

[3] Labin withdrew as counsel for State Defendants during the
pendency of the present motions.  (ECF 125).

17).[4]   State Defendants wish to depose Plaintiffs, VPS employees, and counsel regarding case processing, status conferences, and related information and serve discovery concerning damages, Plaintiffs' participation in the due process hearings, L.D.'s placement, and the like.  (Id. ¶¶ 20-27).  Without such discovery, State Defendants are limited in their ability to verify relevant facts and prepare their defense, according to Labin.  (Id. at ¶¶ 28-29).

Second, district courts considering IDEA civil actions "shall hear additional evidence at the request of a party."  20 U.S.C. § 1415(i)(2)(C)(ii).  Whether or not the record may be supplemented is left to the discretion of the district court, which should admit evidence "if it would 'assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved,'" M.A. v. Jersey City Bd. of Educ., No. 14-6667, 2016 WL 7477760, at *7 (D.N.J. Dec. 29, 2016) (quoting Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995)), but may properly exclude irrelevant, cumulative, or otherwise unhelpful evidence, see P.F. ex rel. G.F. v. Ocean Twp. Bd. of Educ., No. 21-19315, 2022 WL 4354791,

---

[4] The Court granted preliminary approval of the class settlement in C.P. on December 18, 2023.  (C.P. v. N.J. Dep't of Educ., 19-cv-12807, ECF 549).  Nothing in this opinion should be interpreted as contradicting that settlement as to Plaintiffs' individual claims.

at *13 (D.N.J. Sept. 20, 2022) (citing D.K. v. Abington Sch. Dist., 696 F.3d 233, 253 (3d Cir. 2012)).

The Third Circuit has interpreted Section 1415(i)(2)(C)(ii) "to mean that, while a district court may appropriately exclude some evidence, 'a court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved.'" L.G. ex rel. E.G. v. Fair Lawn Bd. of Educ., 486 F. App'x 967, 975 (3d Cir. 2012) (quoting Susan N., 70 F.3d at 760).

In a recent decision in which state defendants similarly invoked Rule 56(d), this Court denied the plaintiffs' motion for summary judgment without prejudice and instructed the state defendants to file a proposed schedule for the discovery necessary to oppose a renewed motion. J.A. v. Monroe Twp. Bd. of Educ., Nos. 1:20-cv-09498 & 1:21-cv-06283, 2023 WL 5451032, at *6 (D.N.J. Aug. 24, 2023). Prior to J.A., a court within this District also concluded – relying upon Federal Rule of Civil Procedure 56(d), 20 U.S.C. § 1415(i)(2)(C)(ii), and a certification from the plaintiffs' counsel stating that depositions and other discovery related to settlement discussions were needed – that summary judgment was premature. See G.W. v. Ringwood Bd. of Educ., No. 19-13734, 2022 WL 17850251, at *6 (D.N.J. Dec. 21, 2022).

22

The Court is convinced that a similar result is warranted here.  Like J.A., Plaintiffs seek to challenge both the administrative decision itself and the process by which the administrative process was implemented.  See 2023 WL 5451032, at *6.  Plaintiffs' statement of material facts cites to a certification of counsel that baldly states that the parties did not request various adjournments.  (ECF 106-2 at ¶¶ 23, 26, 32, 36, 39; ECF 106-3 at ¶¶ 13, 15, 20, 23, 25).  Other statements are supported by handwritten notes – purportedly of ALJ Calemmo.  (ECF 106-2 at ¶¶ 22, 24, 29; ECF 106-3 at ¶¶ 12, 14, 17; ECF 106-5 at 1-4, 7-8).  Reliance on the record provided for entry of summary judgment is particularly inappropriate as Plaintiffs' present counsel does not appear to have participated in the administrative proceedings below, (ECF 120 at 12; ECF 120-4 at ¶ 19), and it is therefore unclear whether the facts presented are "within the personal knowledge of the signatory," see L. Civ. R. 7.2(a).

The Court will therefore deny Plaintiffs' motion for summary judgment without prejudice as to State Defendants and provide State Defendants fourteen days to file on the docket the discovery sought and a related proposed schedule for production.  Such discovery shall be limited, pursuant to Labin's declaration, to only that which is necessary to defend a renewed

motion for summary judgment on the same counts as sought here.[5]

**C. Plaintiffs' Motion for Partial Summary Judgment Against VPS (ECF 108)**

### 1. Count 1

Count 1 of the amended complaint alleges legal error premised on ALJ Calemmo's purported heavy reliance on <u>Hendrick Hudson Central School District Board of Education v. Rowley</u>, 458 U.S. 176 (1982) and citation to Third Circuit cases that predate the legal standard for provision of a FAPE articulated in <u>Endrew F. ex rel. Joseph F. v. Douglas County School District</u>, 580 U.S. 386 (2017).  (ECF 26 at ¶¶ 225-27).  Plaintiffs' briefing reiterates that ALJ Calemmo relied extensively on <u>Rowley</u> – which predated both the 2004 amendments to the IDEA and <u>Endrew F.</u> – and argues that though <u>Endrew F.</u> was cited by ALJ Calemmo, she did so incorrectly by failing to recognize <u>Endrew F.</u>'s "appropriately ambitious" standard.  (ECF 108-1 at 7-8; ECF 121 at 4-5).  VPS counters that ALJ Calemmo specifically cited <u>Endrew F.</u> and additional Third Circuit and New Jersey Supreme Court cases that considered similar matters and that there is no indication that ALJ Calemmo applied an incorrect legal standard.  (ECF 116 at 7-8).

---

[5] VPS also filed an opposition to Plaintiffs' motion against State Defendants, premised on the assertion that Plaintiffs' sought-after relief would be provided by VPS.  (ECF 115).  Because the Court denies summary judgment here, it does not further address VPS's arguments.

First, to the extent that Count 1 is premised on ALJ Calemmo's citation to Third Circuit decisions that predate Endrew F., the Court holds that Plaintiffs' argument must fail. The Third Circuit has expressly rejected the notion that Endrew F. overruled Third Circuit precedent and concluded that the Supreme Court's finding that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances" mirrors its own longstanding precedent.  K.D. ex rel. Dunn v. Downingtown Area Sch. Dist., 904 F.3d 248, 254 (3d Cir. 2018) (quoting Endrew F., 580 U.S. at 403).  District courts within the Third Circuit have therefore rejected challenges similar to Plaintiffs' premised on administrative reliance on pre-Endrew F. decisions or the purported heightened standard of Endrew F.  See D.S. v. Parsippany Troy Hills Bd. of Educ., No. 17-9484, 2018 WL 6617959, at *10 (D.N.J. Dec. 18, 2018) ("Because Endrew F. did not change this Circuit's standard, I cannot fault the ALJ for relying on pre-Endrew Third Circuit case law."); Rogers ex rel. Rogers v. Hempfield Sch. Dist., No. 17-1464, 2018 WL 4635779, at *1 n.1 (E.D. Pa. Sep. 27, 2018) (rejecting as incorrect the plaintiffs' contention that Endrew F. "'significantly changed the legal standard' regarding FAPE").

Plaintiffs next argue that ALJ Calemmo applied an incorrect standard under Endrew F., misinterpreting it to require that "a

school district must show a cogent and responsive explanation to support its position that the IEP is reasonably calculated to enable the child to make progress that is appropriate considering the student's circumstances." (ECF 108-1 at 8; see also ECF 108-4 at 111-13).  Though Plaintiffs assert that this standard is incorrect, the Court finds that it closely tracks the language of Endrew F. that "[t]he IDEA . . . . requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  See 580 U.S. at 403; see also id. at 399 ("To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.").  Post-Endrew F. decisions by the Third Circuit have applied this same standard.  See Esposito v. Ridgefield Park Bd. of Educ., 856 F. App'x 367, 370 (3d Cir. 2021); S.C. ex rel. Helen C. v. Oxford Area Sch. Dist., 751 F. App'x 220, 223 (3d Cir. 2018).

Plaintiffs focus on the lack of the word "ambitious" in ALJ Calemmo's final decision, (ECF 121 at 4-5), and highlight language in Endrew F. stating that an "educational program must be appropriately ambitious in light of his circumstances" and that "this standard is markedly more demanding than the 'merely more than de minimis' test applied by the Tenth Circuit," (ECF 108-1 at 8 (quoting Endrew F., 580 U.S. 402)).  Finding for

26

Plaintiffs would require the Court to assume that ALJ Calemmo cited the correct caselaw and proceeded to cherry-pick which portions of the relevant standard to apply.  The Court declines to do so based solely on ALJ Calemmo's decision to reference one passage from Endrew F. – one cited as the applicable standard by the Third Circuit – and not another.

Further, ALJ Calemmo specifically addressed the "more than de minimis" standard by finding that "the Third Circuit has made clear that more than a 'trivial' or 'de minimis' educational benefit is required, and the appropriate standard is whether the IEP provides for 'significant learning' and confers 'meaningful benefit' to the child."  (ECF 108-4 at 112 (quoting T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000) and collecting cases)).  The fact that ALJ Calemmo cited Third Circuit precedent for this proposition is not surprising and does not warrant a finding that she utilized an incorrect legal standard in light of the Third Circuit's recognition that its own precedent is in accord with Endrew F.  See K.D., 904 F.3d at 254.  The Court will therefore deny Plaintiffs' motion as to Count 1.

## 2. Counts 2 and 3

Counts 2 and 3 of the amended complaint allege that VPS denied L.D. a FAPE.  (ECF 26 at ¶¶ 230-31, 233-34).  Plaintiffs allege that VPS failed to timely develop an IEP for L.D., a fact

that ALJ Calemmo incorrectly concluded did not impact L.D.'s educational progress. (ECF 108-1 at 10-11). L.D. was denied a FAPE in both fifth and sixth grade, according to Plaintiffs, because his IEPs were not appropriately ambitious and did not incorporate the recommendations of private evaluators, all while L.D. continued to struggle. (Id. at 12-19). VPS's awareness of L.D.'s disabilities and refusal to timely and adequately evaluate him violated the district's Child Find obligations, Plaintiffs claim. (Id. at 20-28). Finally, Plaintiffs argue that VPS improperly rejected their request to fund an evaluation with Kay and that ALJ Calemmo should have required VPS to reimburse them for placement at CLS. (Id. at 28-35).

VPS argues that it properly considered the December 2016 referral to evaluate L.D., initially declined to do so – in part – due to improving grades, and the admitted delay from when L.D.'s parents consented to evaluations and the evaluations' completion did not impact L.D.'s educational progress. (ECF 116 at 9-10, 15-16). L.D. was provided with a FAPE in both fifth and sixth grade and the IEP proposed in June 2018 was appropriate and incorporated many of Kay's recommendations. (Id. at 11-14). VPS claims that it never denied Plaintiffs' request for an IEE, but rather advised that Kay did not hold a necessary certification and provided a list of appropriate providers. (Id. at 17-18). Lastly, ALJ Calemmo concluded that

28

the June 2018 IEP offered L.D. a FAPE and thus reimbursement for
unilateral placement at CLS in unwarranted, according to VPS.
(Id. at 19-20).

The Court begins with Plaintiffs' contention that VPS
violated its Child Find obligations.  States are obligated to
have in effect policies and procedures that ensure that all
resident children with disabilities and who are in need of
special education and related services – including children who
are unhoused, wards of the state, or are attending private
school – are identified, located, and evaluated.  34 C.F.R. §
300.111(a)(1)(i); see also 20 U.S.C. § 1412(a)(3).  Child Find
obligations extend to children who are suspected to be in need
of special education despite grade-to-grade advancement, 34
C.F.R. § 300.111(c)(1), and a school district's failure to meet
its "continuing obligation" under Child Find may constitute a
procedural violation of the IDEA, D.K., 696 F.3d at 249.

In New Jersey, district boards of education are required to
develop written procedures for students ages three through
twenty-one, including "referral of students who may have a
disability due to physical, sensory, emotional, communication,
cognitive, or social difficulties."  N.J.A.C. 6A:14-3.3(a).  The
state administrative code does not set a deadline for when
districts must satisfy their Child Find obligations; however,
the Third Circuit has advised that "school districts must

29

identify and evaluate students suspected of having a qualifying disability 'within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability,'" which requires "a case-by-case approach and assess[ment] whether the school district's response was reasonable 'in light of the information and resources possessed' by the district at a given point in time.'" Northfield City Bd. of Educ. v. K.S., No. 19-9582, 2020 WL 2899258, at *8 (D.N.J. June 3, 2020) (quoting W.B. v. Matula, 67 F.3d 484, 501 (3d Cir. 1995) and then M.R., 680 F.3d at 272).

As an initial matter, it is unclear from the record whether ALJ Calemmo evaluated VPS's compliance with Child Find obligations.  The term appears just once in ALJ Calemmo's final decision – as part of her summation of the testimony of VPS's supervisor of special education – and no findings of fact or legal analysis expressly reference Child Find.  (ECF 108-4 at 85, 104-16).  Portions of briefs and testimony are included as motion exhibits for the apparent purpose of supporting assertions relating to relevant dates, but do not include any substance to enable to the Court to deduce how – if at all – Child Find obligations were argued at the administrative level.  Plaintiffs' due process complaint seeks compensatory education for the 2016-17 and 2017-18 school years, but similarly does not reference Child Find.  (ECF 109-2).

To the extent that ALJ Calemmo's final decision addresses L.D.'s entry into VPS with a Section 504 plan, ALJ Calemmo concluded as a matter of fact that the plan provided accommodations including extra time to complete tests and assignments, provision of breaks, and efforts to limit distractions; L.D.'s mother sought additional supports but stated that L.D. was receiving the best grades of his academic career; and that the reasonableness of the district's December 2016 decision to not evaluate L.D. based on his recent transfer into the district, average grades, and the apparent positive response to the Section 504 plan was unrefuted.  (ECF 108-4 at 104-05).  The Court will not disrupt these findings based on the record before it.  See Northfield City Bd. of Educ. v. K.S., 847 F. App'x 130, 133 (3d Cir. 2021) ("'[S]chools need not rush to judgment.'  They may take intermediate steps 'en route to eventually finding a disability.'" (quoting D.K., 696 F.3d at 252)); Anello v. Indian River Sch. Dist., 355 F. App'x 594, 597-98 (3d Cir. 2009) (concluding that the evidence available prior to the parents' request for an evaluation did not establish that the Section 504 plan with which the child entered the district was failing, based on the child's then-improving grades).

Similarly, the Court does not find a basis in the record to disturb ALJ Calemmo's determination that VPS's untimely completion of evaluations did not directly impact L.D.'s

educational progress.  (ECF 108-4 at 105).  School districts are
to conduct initial evaluations within sixty days of receiving
parental consent or the timeframe established by the State, see
34 C.F.R. § 300.301(c)(1), and a meeting to develop an IEP is to
be held within thirty days of determination that the child needs
special education and related services with services made
available "[a]s soon as possible following development of the
IEP," 34 C.F.R. § 300.323(c); see also Lauren G. ex rel. Scott
G. v. W. Chester Area Sch. Dist., 906 F. Supp. 2d 375, 391 n.13
(E.D. Pa. Nov. 6, 2012) (citing 34 C.F.R. § 300.301(c), 34
C.F.R. § 300.323(c), and Pennsylvania Code).  In New Jersey,
"[a]fter parental consent for initial evaluation of a preschool
age or school age student has been received, the evaluation,
determination of eligibility for services under this chapter,
and, if eligible, development and implementation of the
student's IEP shall be completed within 90 calendar days."
N.J.A.C. 6A:14-3.4(e).

     The decision in G.A. ex rel. L.A. v. River Vale Board of
Education, No. 11-3801, 2013 WL 5305230 (D.N.J. Sept. 18, 2013),
is instructive.  There, the court concluded that the ninety-day
window opened on the date of the parent's signed consent to
evaluate – rather than the preceding referral – and the
implementation of an initial IEP was thus fifteen days late.
G.A., 2013 WL 5305230, at *13-14.  This delay was determined to

32

be unactionable because the final proposed IEP was in place by late July and the "procedural violation" did not interfere with the board's obligation to provide services at the beginning of the school year.  Id. at *15.

The delay at issue here is admittedly more significant as consent to evaluate was obtained on March 16, 2017 and the IEP was not complete until August 16, 2017.[6]  The Court is not persuaded, however, by Plaintiffs' argument that the sixty-three-day delay is actionable based primarily on its length as compared to New Jersey's standard 180-day school year.  (ECF 121 at 7-9).  The emphasis is on loss of educational benefit.  See G.A., 2013 WL 5305230, at *15.  ALJ Calemmo, similar to G.A., concluded that L.D. was not directly impacted as his evaluations were completed in time to implement an IEP for his sixth-grade year.  (ECF 108-4 at 105).  Plaintiffs have not explained how a

---

[6] Though the Court does not disagree here with ALJ Calemmo's ultimate conclusion that an IEP was in place within sufficient time as to not disturb L.D.'s education, it disagrees with her assertion that "[p]ursuant to N.J.A.C. 6A:14-3.4(e), the District had ninety days, or by June 14, 2017, to complete the initial evaluations."  (ECF 108-4 at 105).  Rather, the Court finds that New Jersey Administrative Code requires evaluation, eligibility determination, and development and implementation of an IEP to all be completed within the ninety days.  See N.J.A.C. 6A:14-3.4(e); M.A. ex rel. E.S. v. Newark Pub. Schs., No. 01-3389, 2009 WL 4799291, at *5 (D.N.J. Dec. 7, 2009) ("New Jersey regulations specifically impose a 90-day time frame for the entire process to be completed, from parental consent to an initial evaluation to the ultimate implementation of the IEP, should the child be determined eligible for special education services." (citing N.J.A.C. 6A:14-3.4(e)).

procedural delay that spanned the summer months resulted in a loss of educational benefit.  The Court will thus not infer a loss or enter summary judgment on the record before it.

The Court will also deny Plaintiffs summary judgment with respect to the selection and evaluation of Kay.  The criteria for IEEs conducted at public expense "must be the same as the criteria that the public agency uses when it initiates an evaluation, to the extent those criteria are consistent with the parent's right to an independent educational evaluation," including the location of the evaluation and qualifications of the examiner.  34 C.F.R. § 300.502(e)(1).  New Jersey Administrative Code requires that publicly funded IEEs "[b]e obtained from another public district board of education, educational services commission, jointure commission, a clinic or agency approved pursuant to N.J.A.C. 6A:14-5, or a private practitioner who is appropriately certified and/or licensed, where a license is required."  N.J.A.C. 6A:14-2.5(c)(2)(ii).

Plaintiffs argue that, upon a demand for an IEE, a district may either fund the IEE or file a due process complaint and VPS failed to do either.  (ECF 108-1 at 28-29).  VPS unlawfully limited Plaintiffs to a list of evaluators and an evaluation with Kay was further appropriate because VPS failed to evaluate L.D. in an area of disability, the remedy for which would be provision of an IEE, according to Plaintiffs.  (Id. at 29-33).

34

Though Plaintiffs assert that a district is forced down one of two paths upon a request for an IEE, a court within this District has persuasively reasoned that that is not the case. See C.P. ex rel. F.P. v. Clifton Bd. of Educ., No. 19-8469, 2020 WL 4530031, at *6-9 (D.N.J. Aug. 6, 2020). In C.P., the district did not file a due process complaint following the request for a publicly funded IEE and while the court concluded that that failure waived the district's right as to eligibility – that is that the district's evaluation was appropriate and no further evaluation could be offered at the public expense – it did not waive the district's right to challenge whether the requisite criteria for a publicly funded IEE had been met. Id. at *7-8. Similarly, the court interpreted the plain language of 34 C.F.R. § 300.502(b)(2) as not requiring reimbursement for IEEs conducted inconsistent with agency criteria. See id. at *9; see also 34 C.F.R. § 300.502(b)(2)(ii) (counting "[e]nsure that an independent educational evaluation is provided at public expense, unless the agency demonstrates . . . that the evaluation obtained by the parent did not meet agency criteria" among a public agency's options upon a parent's request for a publicly funded IEE). This construction is logical to the Court.

It is also not clear to the Court that the process below was inconsistent with the administrative guidance cited by

Plaintiffs.  The cited Department of Education letter states
that it is not inconsistent with the IDEA for a district to
publish a list of evaluators who meet agency criteria and that
"[w]hen enforcing IEE criteria, the district must allow parents
the opportunity to select an evaluator who is not on the list
but who meets the criteria set by the public agency" and must
further provide an opportunity for parents to demonstrate that
an evaluator who does not meet agency criteria is necessary due
to unique circumstances.  See Dep't of Educ. - Off. of Special
Educ. & Rehab. Servs., Letter to Alice D. Parker (Feb. 20, 2004)
(ECF 108-5 at 8-9).

Here, VPS's response letter included a list of approved
providers with a hyperlink to additional providers and a
notation that "[o]ther NJ Certified Neuropsychologists may be
used but we will need to secure a copy of their certification
and W-9."  (ECF 108-4 at 132-34).  ALJ Calemmo's decision
further relied upon Vineland Policy 2468,[7] which required New
Jersey licensure or certification for evaluators absent a
showing of unique circumstances.  (Id. at 107).  ALJ Calemmo
concluded that S.H.'s testimony "that time was of the essence"

---

[7] Vineland Policy 2468 is not in the record before the Court, but
appears to have been included in the record before ALJ Calemmo.
(ECF 108-4 at 107, 119).  Evaluator qualification was presumed
in C.P., 2020 WL 4530031, at *9; however, the Court notes that
the policy there similarly required New Jersey certification or
licensure, id. at *6 n.4.

as L.D. continued to struggle was insufficient to justify the unilateral selection of Kay.  (Id.).

Further, while Plaintiffs are correct that district courts may order the funding of evaluations as an equitable remedy, see J.R. v. Oxnard Sch. Dist., No. LA CV17-04304, 2019 WL 13031921, at *6 (C.D. Cal. Feb. 15, 2019) (collecting cases), their argument assumes both a denial of a FAPE and that the Court – exercising its discretion – would order the funding of an evaluation inconsistent with agency criteria, see 20 U.S.C. § 1415(i)(2)(C)(iii) (stating that courts in IDEA civil actions "shall grant such relief as the court determines is appropriate"); see also A.S. v. Harrison Twp. Bd. of Educ., No. 14-147, 2016 WL 4414781, at *2 (D.N.J. Aug. 18, 2016) ("[T]he Third Circuit has stated that, 'we discern nothing in the text or history suggesting that relief under IDEA is limited in any way . . . Congress expressly contemplated that the courts would fashion remedies not specifically enumerated in IDEA.'" (omission in original) (quoting W.B., 67 F.3d at 494-95)); M.B. ex rel. J.B. v. S. Orange/Maplewood Bd. of Educ., No. 09-5294, 2010 WL 3035494, at *9 (D.N.J. Aug. 3, 2010) ("While the statute does not prescribe specific remedies, the jurisprudence makes clear that a court should order an equitable remedy tailored to the particular circumstances and deprivations a case may present." (citing Ferren C. v. Sch. Dist. of Phila., 612 F.3d

712 (3d Cir. 2010))).  Therefore, even if the Court were to conclude that summary judgment is warranted based on denial of a FAPE and further concluded in its discretion that public funding of an evaluation was an appropriate remedy – and it does not here – it does not necessarily follow that it would order an evaluation or reimbursement of an evaluation with Kay.

Finally, the Court will deny summary judgment as to Plaintiffs' contention that ALJ Calemmo wrongfully denied tuition and transportation reimbursement at CLS.  Plaintiffs assert that L.D. was a child with a disability for which VPS did not provide a FAPE and who succeeded academically following his placement at CLS.  (ECF 108-1 at 33-34).  Elsewhere in their brief, Plaintiffs argue that L.D. was not provided a FAPE based on failure to incorporate recommendations, denial of ESY services, insufficient goals, and procedural violations for which the Court has not granted summary judgment above.

If a parent enrolls a child with a disability who previously received special education and related services from a public agency into a private school without the public agency's consent or referral, "a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment."  20

38

U.S.C. § 1412(a)(10)(C)(ii); <u>Twp. of Marlboro Bd. of Educ. v.</u>
<u>H.L.</u>, 793 F. App'x 101, 103 n.1 (3d Cir. 2019).  Reimbursement
is permitted upon a showing that "(1) the public school did not
provide a FAPE; and (2) the private placement is 'proper.'"
<u>Norristown Area Sch. Dist. v. F.C.</u>, 636 F. App'x 857, 863 (3d
Cir. 2016) (quoting <u>Florence Cnty. Sch. Dist. Four v. Carter</u>,
510 U.S. 7, 15 (1993)); <u>see also</u> N.J.A.C. 6A:14-2.10(b)
(providing ALJs with the authority to require reimbursement of
enrollment costs upon a finding that a FAPE was not provided to
the student in a timely manner prior to enrollment and private
placement is appropriate).  Reimbursement may be limited or
denied if (1) the parents did not provide notice that they were
rejecting the agency's proposed placement and enrolling the
child in private school at least ten days prior to the child's
removal or (2) "there is 'a judicial finding of unreasonableness
with respect to actions taken by the parents.'"  <u>K.E.</u>, 840 F.
App'x at 710 (quoting 20 U.S.C. § 1412(a)(10)(C)(iii)).

ALJ Calemmo concluded that the IEP proposed in June 2018
offered L.D. a FAPE.  (ECF 108-4 at 115).  She made extensive
factual findings including that incorporation of private and
district-provided OT evaluations were made in L.D.'s sixth-grade
IEP, Kay's addendum stating that L.D. should have been offered
vision services was contradicted by the report of Delaware
Vision Academy and subsequent implemented modifications by the

district, and – following Kay's evaluation – the district agreed
to implement Writing Skills by Diana Hanbury King in addition to
the already-used Read and Write for Google, both of which were
identified by Kay.  (Id. at 106, 108).[8]  ALJ Calemmo found that
VPS's expert, Alex Nonnemacher, credibly rebutted Kay's
criticisms of the IEP and concluded that Kay's testimony
regarding the necessity of ESY services was not credible and her
testimony concerning the appropriateness of placement at CLS was
not supported by credible evidence.  (Id. at 109-11).

When, as here, an ALJ has made credibility determinations
based on live testimony, such determinations are afforded
"special weight" and the Court is not at liberty to depart from
them without non-testimonial, extrinsic evidence justifying such
a departure, which the Court does not find here.  See D.S., 602
F.3d at 564; see also id. at 568 ("The ALJ chose to credit
Appellants' witnesses, and, under the applicable standard of
review the District Court was not at liberty to credit the
witnesses who expressed a contrary opinion without a showing
that there was good reason to do so, a showing that Bayonne did
not make." (citing Shore Reg'l High Sch. Bd. of Educ. v. P.S.,
381 F.3d 194, 200 (3d Cir. 2004))).  Plaintiffs argue that ALJ

---

[8] ALJ Calemmo's conclusions regarding L.D.'s June 2018 proposed
IEP are supported by the Court's review of the document.  (ECF
109-1).

Calemmo's decision not to credit Kay's testimony was a factual and legal error as VPS had not met its burden that a FAPE was provided. (ECF 108-1 at 34)  However, ALJ Calemmo expressly concluded that the proposed IEP provided L.D. a FAPE, (ECF 108-4 at 115), a factual conclusion that the Court will not contradict based on the record before it, see J.S. ex rel. of B.S. v. Green Brook Twp. Pub. Sch. Dist., No. 19-18691, 2020 WL 7028554, at *7 (D.N.J. Nov. 30, 2020) ("Considering an IEP's appropriateness[, however,] is a question of fact, [and] the [ALJ's] determination should be considered prima facie correct in order to afford the [ALJ] due weight." (alterations in original) (quoting C.S. v. Montclair Bd. of Educ., No. 16-3294, 2017 WL 4122433, at *5 (D.N.J. Sept. 18, 2017)).

The Court's own review of the record – including the considerations and accommodations articulated in the proposed June 2018 IEP such as the writing program recommended by Kay; a resource-room program to address L.D.'s writing difficulties; and modifications including the provision of class notes and material written on the board, writing-assistive technology, and adjustments to the quantity of material or time allotted for assignments and assessments – does not lead the Court to a contrary result.  See G.S. v. Cranbury Twp. Bd. of Educ., 450 F. App'x 197, 202-03 (3d Cir. 2011) (finding that the record supported the district court's finding that the IEP was

appropriate and the parents were therefore not entitled to reimbursement); see also I. K. ex rel. Christopher K. v. Manheim Twp. Sch. Dist., No. 22-1347, 2023 WL 3477830, at *4 (3d Cir. May 15, 2023) (concluding that the improvements made by the student at the private Montessori school did not mean that the school district failed to provide a FAPE); J.S., 2020 WL 7028554, at *8 (rejecting the plaintiffs' argument in favor of reimbursement upon the conclusion that that the district's IEP and proposed IEP were appropriate).[9]

The Court takes pains here to stress that its denial of Plaintiffs' summary judgment motions is without prejudice and should not be interpreted as the Court affirming the process and decision below.  Rather, the Court recognizes Plaintiffs' dual-track challenge to the administrative process on both procedural and substantive grounds and apparent and understandable desire to make headway by seeking partial judgment on their broader complaint.  The Court finds that it cannot, however, depart from

---

[9] Plaintiffs, citing Section 1412(a)(10)(C)(iii)(II), assert that Plaintiffs were required to file a response in order to contest reimbursement.  (ECF 108-1 at 34).  Section 1412(a)(10)(C)(iii)(II), rather than compelling a response, provides that reimbursement for private placement may be reduced or denied when a public agency notifies the parents that it intends to evaluate the child and the parents do not make the child available for evaluation.  See 20 U.S.C. § 1412(a)(10)(C)(iii)(II); H.D. ex rel. Jeffrey D. v. Kennett Consol. Sch. Dist., No. 18-3345, 2019 WL 4935193, at *13 (E.D. Pa. Oct. 4, 2019).

ALJ Calemmo's findings and credibility determinations – which are afforded deference under the applicable standard of review and which appear to have been arrived at in a logical, thoughtful manner – on the record before it.  It further appears to the Court that important facts, including those that may support defenses available to State Defendants, are not in the record before it.  Renewed motions made with additional support or, in the case of State Defendants' defenses, a lack thereof may lead to contrary decisions in the future.

### D. Motion to Seal (ECF 111)

Lastly, the Court will grant the parties' joint motion to seal Exhibits T, V, Y and Z filed under seal as part of Plaintiffs' motion for partial summary judgment against VPS. (ECF 111).  Motions to seal are governed by Local Civil Rule 5.3.  See Medley v. Atl. Exposition Servs., Inc., 550 F. Supp. 3d 170, 203 (D.N.J. July 26, 2021).  Local Civil Rule 5.3 requires that motions to seal be made via a single, consolidated motion on behalf of all parties, L. Civ. R. 5.3(c)(1), and include an index providing with particularity (a) the nature of the materials or proceeding at issue, (b) the private or public interests warranting the relief sought, (c) the clearly defined, serious injury that would result without relief, (d) an explanation as to why less restrictive alternatives are unavailable, (e) any prior orders sealing the same materials,

and (f) the identity of any objector, L. Civ. R. 5.3(c)(3).

Courts must make findings on the Local Civil Rule 5.3(c)(3) factors in orders and opinions sealing or otherwise restricting public access to judicial proceedings or related materials.  L. Civ. R. 5.3(c)(6); Sanofi-Aventis U.S. LLC v. Novo Nordisk Inc., No. 3:16-cv-09466, 2018 WL 10911501, at *1 (D.N.J. June 19, 2018).  There is a presumption in favor of public access to judicial records which may be overcome only upon a showing of "good cause" – that is "a particularized showing that disclosure will cause a 'clearly defined and serious injury'" – that materials should be protected.  See Medley, 550 F. Supp. 3d at 203-04 (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)).

The Court notes at the outset that the parties have not attempted to comply with Local Civil Rule 5.3 in presenting their motion.  The motion does not include "as part of an affidavit, declaration, certification or other documents of the type referenced in 28 U.S.C. § 1746 . . . an index, substantially in form suggested by Appendix U."  L. Civ. R. 5.3(c)(3).  Rather, the parties' submission includes only a three-page motion and a proposed order that largely copy-and-pastes the motion text into proposed findings of fact for the Court's signature.  (ECF 111; ECF 111-1).  Similar procedural shortcomings have led to motion denials.  See DCM Group, Inc. v.

44

Raina, No. 22-1193, 2022 WL 18620653, at *1 (D.N.J. June 15, 2022); HomeSource, Corp. v. Retailer Web Servs., LLC, No. 18-11970, 2019 WL 13084409, at *2 (D.N.J. Oct. 4, 2019).

While the Court finds that it may deny the parties' motion on this basis, it concludes that doing so would cause unnecessary delay and uncertainty when the merits of the motion are apparent to the Court.  The motion – albeit somewhat summarily – addresses the Local Civil Rule 5.3(c)(3) factors and explains that the materials sought to be sealed include sensitive information such as L.D.'s name, birthdate, and medical information; there is a privacy interest in personal medical and behavioral information and – if made public – such information could lead to consequences such as bullying and discrimination against L.D.; less restrictive alternatives such as redaction would by unduly onerous; there has been no prior order sealing these materials; and there is no objection sealing.  (ECF 111).

The Court agrees with the parties based on its own review of the records sought to be sealed.  Exhibits T and V are L.D.'s April and June 2018 proposed IEPS, each including personal identifying information, medical diagnoses, academic performance history, and related narratives.  (ECF 109; ECF 109-1).  Exhibit Z is progress report from CLS describing L.D.'s academic and OT performance.  (ECF 109-3).  The Court recognizes a compelling

privacy interest in these records and agrees with the parties
that redaction would be impractical. See E.K. v. N.J. Dep't of
Educ., No. 20-14409, 2020 WL 12188149, at *1-2 (D.N.J. Nov. 19,
2020) (recognizing federal and state policies concerning the
privacy rights of minors and the harm the child faced if details
of her education and disabilities were made public); Hatikvah
Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ., No.
20-2382, 2020 WL 4448988, at *3 (D.N.J. Aug. 3, 2020)
(concluding that it would have been impractical to redact an
exhibit detailing IEPs and transcripts from administrative
proceedings, rendering sealing appropriate).

Exhibit Y is Plaintiffs' underlying due process complaint.
(ECF 109-2).  While it may be practicable in some instances to
protect legitimate privacy interests in such complaints by means
less restrictive than wholesale sealing, see Hatikvah Int'l
Acad. Charter Sch., 2020 WL 4448988, at *2, the Court notes that
this particular complaint is largely comprised of an attached
narrative that details L.D.'s diagnoses, school performance, and
similar information and is sensitive and not readily redactable
for reasons similar to the other exhibits.

The Court will therefore grant the parties' motion to seal
despite its failure to comport with Local Civil Rule 5.3.  See
Molz v. Fed. Aviation Admin., No. 1:21-cv-20039, 2023 WL
2238108, at *8-9 (D.N.J. Feb. 27, 2023) (granting a motion to

seal despite failure to adhere to Local Civil Rule 5.3 because the defendants articulated sufficiently specific harm to warrant sealing).  The Court advises the parties, however, that a future motion to seal – even one seeking to seal materials similar to the instant motion – may be denied based on repeated noncompliance with Local Civil Rule 5.3.

## IV. Conclusion

For the reasons stated above, the parties' motion to seal, (ECF 111), will be granted and Plaintiffs' motions for partial summary judgment, (ECF 106; ECF 108), will be denied without prejudice.  State Defendants shall have fourteen days to file a letter on the docket detailing with particularity the discovery necessary to respond to a motion for summary judgment as to the same counts as the present motion and a proposed schedule for completion.[10]

An Order consistent with this Opinion will be entered.

Date: <u>January 17, 2024</u>                    <u>s/ Noel L. Hillman</u>
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[10] In this District, discovery matters are generally shepherded by Magistrate Judges.  Nothing in this opinion or accompanying order is intended to supplement or contradict any discovery order issued or to be issued by Magistrate Judge Matthew J. Skahill.